UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER DAVIS,

                    Plaintiff,                                Case No. 1:23-cv-214

v.                                                            Honorable Ray Kent

HEIDI WASHINGTON et al.,

                    Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a county jail inmate under 42 U.S.C. § 1983. Plaintiff

has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c)

and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters

in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial

review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131,

1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a

putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless

notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff presently is incarcerated at the Berrien County Jail, in St. Joseph, Berrien County, Michigan. The events about which he complains, however, occurred at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County. Plaintiff sues Director of the Michigan Department of Corrections (MDOC) Heidi Washington and JCF Warden Unknown Naggy.

Plaintiff alleges that he contracted COVID-19 while at JCF in March of 2022 because he was allowed contact with a COVID-19-positive inmate or employee. (Compl, ECF No. 1, PageID.3.) Specifically, Plaintiff claims that Defendant Washington "holds full responsibility of

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

the complete operations of the [MDOC]," and Defendant Naggy "holds full responsibility" over JCF. (*Id.*) Plaintiff alleges that these Defendants "allowed (inside of J.C.F. where Plaintiff was housed either an[] employee or another inmate) who had COVID-19 to make contact with Plaintiff and give [Plaintiff] COVID-19." (*Id.*) Plaintiff claims that, had Defendants Washington and Naggy followed mandates in place requiring testing of all employees prior to work, Plaintiff would not have contracted COVID-19. (*Id.*, PageID.3–4.)

Based on the foregoing allegations, Plaintiff brings claims under the First, Fifth, Eighth, and Fourteenth Amendments. (*Id.*, PageID.3.) He seeks $19,000 in compensatory damages and $1 million in punitive damages. (*Id.*, PageID.5.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

4

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A.      Eighth Amendment Cruel and Unusual Punishment**

Plaintiff claims that Defendants Washington and Naggy violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (ECF No. 1, PageID.3.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

5

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.    Objective Prong

In this action, Plaintiff contends that he contacted COVID-19 while incarcerated at JCF. (*See generally* ECF No. 1.)

In a 2020 case brought by federal prisoners under 28 U.S.C. § 2241, the United States Court of Appeals for the Sixth Circuit addressed the issue of whether the Bureau of Prisons (BOP) violated the Eighth Amendment rights of medically vulnerable inmates at the Elkton Federal Correctional Institution by failing to adequately protect them from COVID-19 infection. *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). In the opinion, the Sixth Circuit found that the plaintiffs in *Wilson* had easily satisfied the objective component of an Eighth Amendment claim:

> The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death.  The BOP acknowledges that "[t]he health risks posed by COVID-19 are significant." CA6 R. 35, Appellant Br., PageID 42. The infection and fatality rates at Elton have borne out the serious risk of COVID-19, despite the BOP's efforts. The transmissibility of the COVID-19 virus in conjunction with Elton's dormitory-style housing—which places inmates within feet of each other—and the medically-vulnerable subclass's health risks, presents a substantial risk that petitioners at Elton will be infected with COVID-19 and have serious health effects as a result, including, and up to, death. Petitioners have put forth sufficient evidence that they are "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

*Id.* at 840.

Per *Wilson*, the Sixth Circuit has determined that a plaintiff may satisfy the objective prong by alleging conditions that could facilitate COVID-19 transmission and health risks posed by the virus, certainly at least with respect to medically vulnerable inmates. Plaintiff does not allege that he is medically vulnerable; but he does allege that he contracted COVID-19 while in incarcerated. The Court therefore assumes, without deciding, that Plaintiff has satisfied the objective prong of the deliberate indifference test.

### 2.    Subjective Prong

Notwithstanding Plaintiff's ability to satisfy the objective prong, he fails to allege facts sufficient to satisfy the subjective prong of the deliberate indifference test.

Taking Plaintiff's well-pleaded factual allegations as true, Plaintiff contracted COVID-19 in March of 2022. (ECF No. 1, PageID.3.) Plaintiff then alleges, in a conclusory fashion, that because he contracted COVID-19—presumably from exposure to someone else with COVID-19 at the prison—the mandated testing procedures for MDOC employees must not have been followed, and if testing procedures were not followed, it was the fault of Defendants Washington and Naggy, who are responsible for the overall administration of the MDOC and the JCF facility, respectively. (*See id.*) However, Plaintiff's conclusory allegations fall far short of stating a plausible Eighth Amendment claim against these Defendants.

7

Government officials, such as Defendants Washington and Naggy, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Plaintiff must plead facts to demonstrate that each named defendant was "personally involved" in the unconstitutional action. *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (quoting *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)).

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*[ *v. Luttrell*], 199 F.3d [295,] 300 [6th Cir. 1999)] (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any *facts* showing that Defendants Washington and Naggy were personally involved with the testing of JCF employees, or that these individual Defendants

were aware that employees infected with COVID-19 were not being tested but were nonetheless allowed access to Plaintiff in a manner that would have posed a serious risk to Plaintiff's health or safety, such as without social distancing, masks, or other measures to prevent the spread of COVID-19. *See Wilson*, 961 F.3d at 843–44 (holding that the BOP was not deliberately indifferent where, even if the BOP's response to COVID-19 was inadequate, it took many affirmative actions, not only to treat and quarantine inmates who had tested positive, but also to prevent the widespread transmission of COVID-19).

Indeed, Plaintiff has not alleged *facts* suggesting that he had any knowledge—either firsthand, secondhand, or even thirdhand—that JCF employees were in fact not being tested prior to coming to work. Plaintiff instead asks this Court to infer a lack of testing of employees by the mere fact that Plaintiff contracted COVID-19. However, that is far too great a logical leap for this Court to make. Plaintiff's complaint contains no facts to plausibly suggest that Plaintiff contracted COVID-19 from a JCF employee (as opposed to an inmate), let alone one who had not been tested for COVID-19 but who would have otherwise returned a positive test.

Although it is clear that Plaintiff believes that Defendants' actions resulted in Plaintiff's COVID-19-positive diagnosis in March of 2022, the factual allegations in Plaintiff's complaint are simply too scarce to show deliberate indifference. In short, Plaintiff appears to ask the Court to infer plausibility in his claims from mere ambiguity; however, ambiguity does not support a claim. The Court is sympathetic to the challenges that Plaintiff and other prisoners have faced while incarcerated during the COVID-19 pandemic. However, Plaintiff must plead enough factual content to permit the Court to draw a reasonable inference that Defendants Washington and Naggy were deliberately indifferent to the risk of COVID-19 transmission and, therefore, violated the

Eighth Amendment. *See Iqbal*, 556 U.S. at 679. Plaintiff has not done so here. Therefore, the Court must dismiss Plaintiff's Eighth Amendment claims.

### B.    First Amendment Retaliation

Plaintiff briefly references a claim for First Amendment retaliation. (ECF No. 1, PageID.3.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff does not set forth facts that would plausibly suggest that Plaintiff engaged in any First Amendment protected conduct, that Defendants Washington and Naggy were aware of the same, or that Defendants Washington and Naggy took any adverse action against Plaintiff that could be said to have been motivated by Plaintiff's exercise of a protected right. Accordingly, the Court will dismiss Plaintiff's First Amendment claim.

### C.    Fifth Amendment Due Process

Plaintiff likewise fails to state a Fifth Amendment claim. The Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

10

U.S. Const. amend. V. These protections bear no relation to the allegations of Plaintiff's complaint.

In his reference to the Fifth Amendment, Plaintiff includes, in parentheses, "due process." (ECF No. 1, PageID.3.) However, while the Fourteenth Amendment's Due Process Clause applies to the "activities of the states and their instrumentalities . . . the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Scott v. Clay Cnty.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (citations omitted). Plaintiff does not allege that Defendants Washington or Naggy are federal employees. Therefore, Plaintiff's Fifth Amendment claim will also be dismissed.

Moreover, even if this Court were to construe Plaintiff's Fifth Amendment claim for violation of due process as one under the Fourteenth Amendment, Plaintiff's claim would likewise fail. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). However, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

In the context of a claim alleging deliberate indifference to a serious health or safety risk, the Eighth Amendment applies to convicted prisoners, while the Fourteenth Amendment applies to pretrial detainees. *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 566 (6th Cir. 2020). Because Plaintiff alleges that he was in the custody of the MDOC at the time of the alleged events and was, therefore, a convicted prisoner, his claims are properly governed by the Eighth Amendment. The Court will dismiss any Fourteenth Amendment claim.

### D.      Fourteenth Amendment Equal Protection

Finally, Plaintiff indicates that he intends to bring a claim under the Fourteenth Amendment for violation of Plaintiff's right to equal protection. (ECF No. 1, PageID.3.) The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). Plaintiff also does not allege that Defendants have interfered with any fundamental right.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To set forth an equal protection claim, Plaintiff must plead facts that would plausibly suggest "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff has not alleged that he has been treated differently from others similarly situated with respect to his exposure to or diagnosis of COVID-19. Accordingly, the Court will dismiss Plaintiff's equal protection claim.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    April 20, 2023            /s/ Ray Kent
                                    Ray Kent
                                    United States Magistrate Judge

13